IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHUN MEI TONG,<br> aka "Debbie Kim,"<br><br>Defendant. | CR. NO. 18-00082 JMS<br><br>ORDER DENYING DEFENDANT'S "MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. 3582(c)(1)(A), AS AMENDED BY THE FIRST STEP ACT," ECF NO. 185 |

**ORDER DENYING DEFENDANT'S "MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. 3582(c)(1)(A), AS AMENDED BY THE FIRST STEP ACT," ECF NO. 185**

## I. INTRODUCTION

Before the court is pro se Defendant Chun Mei Tong's ("Defendant") "Motion To Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A), as Amended by the First Step Act" ("Motion"). ECF No. 185. Defendant requests a reduced sentence based on a recent Supreme Court decision, *Dubin v. United States*, 143 S.Ct. 1557 (2023), which Defendant claims "makes me innocent of my charge of 18 U.S.C. § 1028A(a)(1) Aggravated Identity Theft and decreases my sentence by 24 months." ECF No. 185 at PageID.2749. Because *Dubin* is not

applicable to Defendant's convictions for aggravated identity theft, her Motion is DENIED.[1]

## II. BACKGROUND

On September 6, 2019, Tong was found guilty by a jury of counts 1 through 8 of an Indictment charging her with (1) five counts of wire fraud in violation of 18 U.S.C. § 1343; and (2) three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).[2]  *See* ECF Nos. 1, 86, 87.  These charges stemmed from Tong's criminal conduct as an employee of the United States Department of Housing and Urban Development ("HUD").  More specifically, during her employment with HUD, Tong rented properties to tenants via the Section 8 Housing Choice Voucher Program (the "Section 8 program"), in violation of federal regulations that prohibit HUD employees from participating in the Section 8 program.  *See* Presentence Investigation Report ("PSR") ¶ 11, ECF No. 100 at PageID.700.

---

[1] The court assumes—without deciding—that it has the authority under 18 U.S.C. § 3582(c)(1)(A) to reduce a sentence based on a change in non-constitutional decisional law that would make a defendant factually innocent of a conviction.

[2] 18 U.S.C. § 1028A(a)(1) states: "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."  Wire fraud is an enumerated felony in subsection (c)(5).

On January 6, 2020, the court sentenced Tong to a total of 66 months imprisonment. The sentence consisted of five concurrent 42-month terms of incarceration for the wire fraud convictions (counts 1–5) and three concurrent 24-month terms of incarceration for the aggravated identity theft convictions (counts 6–8), with the 24-month terms of incarceration running consecutively to 42-month terms of incarceration. *See* ECF Nos. 105, 109. She was also sentenced to a three-year term of supervised release (three years supervised release as to counts 1 to 5 and one year supervised release as to counts 6 to 8, all to run concurrently). *See* ECF No. 109 at PageID.883. Judgment was entered on January 10, 2020. *See id*.

On July 12, 2023, the court received Defendant's Motion. ECF No. 185. The government filed a response on August 2, 2023, ECF No. 187, and Defendant filed a Reply on August 21, 2023. ECF No. 188. The court decides the Motion without a hearing pursuant to Criminal Local Rule 12.2(a)(1).

### III.  DISCUSSION

**A.   Legal Standard**

Ordinarily, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Wright*, 46 F.4th 938, 944 (9th Cir. 2022) (quoting *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021), and 18 U.S.C. § 3582(c)). Congress created a limited exception for modifying the sentence of a federal inmate who files a motion for "compassionate release"

satisfying the procedural and substantive requirements of 18 U.S.C. § 3582(c)(1)(A). *See id.* Section 3582(c)(1)(A), as amended by the First Step Act of 2018 ("FSA"), provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>     (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

"As compassionate release derogates from the principle of finality, it is a 'narrow' remedy . . . and the court's disposition of a compassionate release motion 'is discretionary, not mandatory[.]'" *Wright*, 46 F.4th at 944–45 (internal citations omitted). And although the court must consider "extraordinary and compelling" reasons, the applicable policy statements by the Sentencing Commission, and § 3553(a) factors, it may deny compassionate release on any of these bases:

4

> First, the district court must determine whether extraordinary and compelling reasons warrant a sentence reduction. Second, the court must evaluate whether a reduction would be consistent with applicable policy statements issued by the Sentencing Commission. Third, the court must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted under the particular circumstances of the case. Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds.

*Wright*, 46 F.4th at 945 (internal citations, quotation marks, and footnote omitted).

Although § 3582(c)(1)(A) requires a sentence reduction to be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," that requirement does not apply to this case, as there is currently no policy statement from the Sentencing Commission that is "applicable" to compassionate release motions filed by a defendant rather than by the BOP Director. *See Wright*, 46 F.4th at 946. Specifically, the Sentencing Commission's policy statement, Guideline § 1B1.13, was promulgated before the FSA provided criminal defendants the ability to file motions for compassionate release on their own behalf. *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021) (per curiam). The Sentencing Guidelines have not yet been amended post-FSA.[3] This

---

[3] On April 5, 2023, the Sentencing Commission promulgated preliminary amendments that address defendant-filed motions under § 3582(c)(1)(A). *See* United States Sentencing

(continued . . .)

5

court is thus empowered to consider any extraordinary and compelling reason that warrants a sentence reduction. *See id.* at 801–02. In making this determination, "[t]he Sentencing Commission's statements in [§ 1B1.13] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* at 802.

   The Ninth Circuit in *Keller*, after *Aruda*, further clarified the scope of the district court's discretion, holding that a district court may deny a compassionate release motion solely based on defendant's failure to show an "extraordinary and compelling" reason for release. "[A] district court that properly *denies* compassionate release need not evaluate each step" in the "sequential step-by-step analysis" required by 18 U.S.C. § 3582(c)(1)(A). *Keller*, 2 F.4th at 1284. "Such a reading is compelled by the structure of the compassionate release statute, which treats its requirements as conjunctive." *Wright*, 46 F.4th at 947 (citing *Keller*, 2 F.4th at 1284). "This structure necessarily dictates that a court may deny compassionate release at *any* stage of the § 3582(c)(1)(A) pipeline." *Id*. (emphasis added).

---

Commission News Release ("News Release") https://www.ussc.gov/about/news/press-releases/april-5-2023 (last visited August 22, 2023); *see also* Amendments to the Sentencing Guidelines (Preliminary), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf (last visited August 22, 2023). The amendments will become effective November 1, 2023, unless Congress rejects them.

### B. Exhaustion of Administrative Remedies

To satisfy § 3582(c)(1)(A)'s exhaustion requirement, a defendant must submit a request to the BOP (often, the prison warden) that explains the basis for the relief sought and provides a proposed release plan. *See* 28 C.F.R. § 571.61(a)(1)–(2); *see also United States v. Gorion*, 2023 WL 121468, at *3 (D. Haw. Jan. 6, 2023) (citations omitted).

Here, Defendant has sufficiently shown that she administratively exhausted her request for compassionate release based on the Supreme Court's decision in *Dubin*. *See* ECF No. 185-1 at PageID.2753.

### C. Extraordinary and Compelling Reasons Do Not Warrant Release

Defendant bears the burden of establishing extraordinary and compelling reasons warranting compassionate release. *See Wright*, 46 F.4th at 951; *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020). Here, she has failed to do so.

At all relevant times, Defendant was employed by HUD as a financial analyst. In that role, she was responsible for advising Public Housing Agencies ("PHAs"), the local administrators of HUD's Section 8 housing program. ECF No. 100 at PageID.700–701. Under HUD ethics and conflict of interest rules, Defendant was prohibited from participating in the Section 8 Program, with narrow exceptions not applicable to her. *Id*. at PageID.701.

7

While employed at HUD, Defendant and her husband owned and operated Affordable Housing, LLC ("Affordable Housing"), a Honolulu property management company. *Id*. at PageID.702. Through Affordable Housing, Defendant owned and managed approximately 40 residential properties located in Honolulu and Indiana, with at least five of these properties rented under the Section 8 program from 2014 through 2017. *Id*. Defendant concealed from HUD her involvement in Affordable Housing and her participation in the Section 8 program rentals by using an alias, "Debbie Kim." *Id*. For instance, for each of the Section 8 program properties managed by Affordable Housing, Defendant used the name "Debbie Kim" on HUD documentation, including contracts and lease agreements. *Id*. The use of interstate wires to pay Defendant (through Affordable Housing) for the rental of properties through the Section 8 program was the basis for the wire fraud counts. *Id*. at PageID.704–708.

And relevant to the three aggravated identity theft counts,[4] Defendant "forged the names and signatures of the original owners [of properties Defendant

---

[4] Count 6 charges:

> On or about the September 3, 2014, within the District of Hawaii and elsewhere, CHUN MEI TONG, the defendant, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, the name and signature of A.W., who was the owner of a residential property located on Kahau St., Waianae, Hawaii, on an "Owner Authorization Form," knowing that the means of identification belonged to an actual

(continued . . .)

8

rented using the Section 8 program] on the 'Owner Authorization Forms,' which were then submitted to the Oahu PHAs. The forms authorized the Section 8 payee to be the 'Agent' directly, namely 'Debbie Kim' for 'Affordable Housing,' rather than the property owner."[5] *Id*. at PageID.703. The testimony at trial also

---

person, during and in relation to the wire fraud offense described in Count 3, a violation of Title 18, United States Code, section 1343.

Count 7 charges:

On or about the September 4, 2015, within the District of Hawaii and elsewhere, CHUN MEI TONG, aka "Debbie Kim," the defendant, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, F.K., to wit, the name and signature of F.K., who was the owner of a residential property located on Pelanaki Street, Waianae, Hawaii, on an "Owner Authorization Form," knowing that the means of identification belonged to an actual person, during and in relation to the wire fraud offense described in Count 4, a violation of Title 18, United States Code, section 1343.

Count 8 charges:

On or about the May 26, 2016, within the District of Hawaii and elsewhere, CHUN MEI TONG, aka "Debbie Kim," the defendant, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, A.P., to wit, the name and signature of A.P., who was the owner of a residential property located on Kokea Street, Honolulu, Hawaii, on an "Owner Authorization Form," knowing that the means of identification belonged to an actual person, during and in relation to the wire fraud offense described in Count 5, a violation of Title 18, United States Code, section 1343.

ECF No. 1.

[5] Jayne Lee, an employee of the City and County of Honolulu Department of Community Services, Rental Assistance Branch, testified at trial that an Owner Authorization Form is used to determine "who represents the owner if it's someone else besides the owner

(continued . . .)

9

established that Defendant was not given permission to sign these forms on behalf of any property owner or legal representative. *Id*. at PageID.709. Further, the rent payments went to Affordable Housing (and thus Defendant and her husband), not the property owners or their legal representatives. *Id*. at PageID.708.

Defendant now claims that *Dubin* makes her "innocent" of the three aggravated identity theft charges. The court disagrees.[6]

In *Dubin*, the defendant overstated the qualifications of an employee psychologist, resulting in an inflated health care reimbursement. The reimbursement request included the patient's Medicaid reimbursement number, which is a "means of identification" within the meaning of § 1028A(a)(1). 143 S.Ct. at 1563. The Court determined that these facts did not support a

---

himself or herself," and "where the owner designates the [rent] payment to go to." ECF No. 83 at PageID.446–447. Further, when an owner signs an Owner Authorization Form designating payment to a third party (such as Affordable Housing), it is the expectation that "the owner will eventually get the payment through the designated payee and agent." *Id*. at PageID.487.

[6] Although the proposed amendment to Sentencing Guideline § 1B.13 will not become effective until November 1, 2023 (unless Congress rejects them), it appears that the proposed amendment would preclude Defendant's claim. Proposed Guideline § 1B1.13(c) states, with an exception not applicable to Defendant, that:

> a change in law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law . . . may be considered for purposes of determining the extent of any such reduction.

*See* https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf (last visited August 22, 2023).

§ 1028A(a)(1) conviction because the statute requires the means of identification to be "at the crux" of the criminality:

> A defendant uses another person's means of identification in relation to a predicate offense when this use is at the crux of what makes the conduct criminal. To be clear, being at the crux of the criminality requires more than a causal relationship, such as facilitation of the offense or being a but-for cause of its success.

*Id.* at 1573 (internal quotation marks omitted). Stated differently, § 1028A(a)(1) is violated "when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal . . . ." *Id.* at 1563.

Here, the evidence adduced at trial is clear—Defendant's aggravated identity theft convictions were at the very crux of her convictions for the underlying wire fraud counts. As an example, as to the aggravated identity theft charge in count 7 Defendant was convicted of using, without lawful authority, the means of identification of F.K. (a real person) on an Owner Authorization Form, and she did so during and in relation to the wire fraud offense charged in count 4 of the Indictment. *See* ECF No. 89 at PageID.596–597. As established at trial (and set forth in the Presentence Report), Defendant forged F.K.'s signature on a September 4, 2015 Owner Authorization Form, and that forgery enabled Affordable Housing to receive rental payments on F.K.'s behalf. ECF No. 100 at PageID.706. But in fact F.K. had died in August 2011, with his property managed

by Randall Yee, the administrator of F.K.'s estate. *Id.* at PageID.706–707.[7] In other words, Defendant had no legal interest in F.K.'s property, but nonetheless rented it under the Section 8 program, and forged the prior owner's signature to direct Section 8 program rental proceeds to her through Affordable Housing.

In short, the use of F.K.'s means of identification that formed the basis for the aggravated identity theft conviction is directly related to the wire fraud conviction for count 4. The crux of count 4 was Defendant's efforts to conceal her involvement in renting Section 8 program property located on Pelanaki Street, Waianae, Hawaii. She did this by creating a false identity (Debbie Kim) and a rental property entity (Affordable Housing) operated by Debbie Kim, and then forged F.K.'s name on the Owner Authorization Form to direct the payments—illegally—to her. Defendant's scheme could only succeed if she could profit by doing so. And she could profit only if she could direct the payments from the true owner to herself. She accomplished this by forging F.K.'s signature. The forging of that signature was at the very heart of her wire fraud scheme.[8]

---

[7] Randall Yee never received any of the rent payments. *See* ECF No. 100 at PageID.706–707.

[8] Given the court's determination that *Dubin* does not call into question the validity of Defendant's convictions under § 1028A(a)(1), the court does not engage in an analysis of the § 3553(a) factors. *See Wright*, 46 F.4th at 945.

## IV.  CONCLUSION

For the reasons stated, Defendant's Motion, ECF No. 185, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 22, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Tong*, Cr. No. 18-00082 JMS, Order Denying Defendant's "Motion To Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A), as Amended by the First Step Act," ECF No. 185